DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SIDNEY L. PACHTER, JR.,**
Appellant,

v.

**DANIELLE PACHTER,**
Appellee.

No. 4D15-200

[June 29, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Dana Gillen, Judge; L.T. Case No. 502013DR003944XXXXSB.

John F. Schutz of Schutz & White, LLP, West Palm Beach, for appellant.

Leonel R. Plasencia and Curt Sanchez of the Law Offices of Plasencia & Associates, West Palm Beach, for appellee.

CONNER, J.

The Former Husband appeals the trial court's final judgment of dissolution of marriage, raising several challenges. We affirm, without discussion, on all issues raised by the Former Husband, except two. We reverse: (1) the trial court's double imposition of income tax consequences; and (2) the order requiring the Former Husband to pay all of the expenses of the marital residence pending its sale, without reimbursement for one-half of those expenses from the sale proceeds.

The first issue we address involves withdrawals made from the Former Wife's IRA account, which the trial court found was accomplished by the Former Husband forging the Former Wife's signature to withdrawal requests. At the final hearing, on cross-examination, when the Former Husband was asked about three specific withdrawal requests and who prepared them, he invoked his Fifth Amendment right against self-incrimination. The money obtained from the three withdrawal requests was deposited into a trust account controlled by the Former Husband.

The Former Wife testified that after she and the Former Husband

separated and he left the marital home, she was going through some files, and found the IRA withdrawal requests. She then testified that the signatures authorizing the withdrawals on three of the requests were not hers, and that she did not authorize the withdrawals or have knowledge of them.

In the final judgment of dissolution of marriage, the trial court drew a negative inference from the Former Husband's invocation of his Fifth Amendment privilege in reference to the three withdrawal requests, coupled with the Former Wife's testimony on the matter, to find that the Former "Husband did in fact forge his Wife's name to the IRA withdrawals," and used the money for nonmarital endeavors. As a result, in distributing the marital assets, the trial court awarded the Former Wife an unequal distribution, equal to the amount that the Former Husband withdrew from the IRA account plus an amount equal to the income taxes assessed to the Former Wife's account associated with the withdrawals. The trial court also awarded to the Former Wife the balance of her IRA account without any marital interest imposed on behalf of the Former Husband.

The Former Husband argues that the trial court erred in requiring him, by an unequal distribution of marital assets, to make a payment to the Former Wife for the income taxes assessed as a result of the withdrawals. He contends that, because he previously paid the taxes when the withdrawals were made from the IRA account, the final judgment requires him to make a "double" payment for the taxes.

We agree with his argument. The record supports the Former Husband's contention that the income taxes assessed for the money wrongfully withdrawn from the Former Wife's IRA account were paid by a tax withholding authorization as part of the withdrawal request, leaving him with a net amount from the withdrawal.[1] The amounts awarded to the Former Wife in the final judgment as reimbursement for the tax consequence of the disbursements from her IRA account were actually deducted from the cash withdrawal and given to the Internal Revenue Service (IRS); the taxes were not an additional amount withdrawn from the

---

[1] Former Wife's Exhibit 1, admitted into evidence at the final hearing, contains copies of the three forged requests for withdrawals from her IRA account. The withdrawal request for $32,000 dated April 12, 2012, requests that $7,000 be withheld for payment to the IRS. The withdrawal request for $8,300 dated July 16, 2012, requests that $1,300 be withheld for payment to the IRS. The withdrawal request for $18,500 dated January 11, 2013, requests that $3,500 be withheld for payment to the IRS.

2

account. Thus, it was error for the trial court to require the Former Husband to pay the taxes again by way of an unequal distribution of marital assets to the Former Wife.

The second issue we address pertains to the marital home. The trial court ordered that the home be put on the market beginning two months after entry of the final judgment. The trial court ordered that, prior to sale of the home, the Former "Wife shall enjoy exclusive possession and control over the premises. [The Former] Husband shall pay for all carrying costs of the residence, except utilities for which [the Former] Wife shall bear sole and exclusive responsibility." The Former Husband argues the trial court erred in giving the Former Wife exclusive possession of the marital home with no adjustment from the sale proceeds for the Former Husband paying all the carrying costs until the home is sold.

The Former Husband filed a motion for rehearing raising the argument. The trial court denied the motion, but clarified that it ordered the Former Husband to pay the marital home expenses prior to sale as a sanction for the Former Husband's fraud, citing to sections 61.075(1)(j) and (3)(d), Florida Statutes.

We find no error with the trial court awarding exclusive possession of the marital home pending its sale and making the Former Husband entirely responsible for the expenses of the home prior to the sale. Section 61.075(1)(j), Florida Statutes (2014), states that one of the factors a trial court can consider in determining to distribute marital assets in an unequal manner is "[a]ny other factors necessary to do equity and justice between the parties." Because the Former Husband's fraudulent behavior deprived the Former Wife of money she would otherwise have had access to, prior to the sale of the home (when the equalizing payment is to be made) for payment of the expenses of the home, it is reasonable that the trial court should require the Former Husband to pay the expenses.

However, we agree with the Former Husband's argument that the trial court erred in denying an adjustment for one-half of the expenses paid by the Former Husband from the sale proceeds. As stated above, the trial court had already imposed one sanction for the Former Husband's wrongful conduct by granting an unequal distribution of marital assets to repay the Former Wife for the money improperly taken from her IRA account, and another sanction by giving Former Wife exclusive possession of the home and requiring the Former Husband to pay the expenses pending sale.

The Former Husband cites to our decision in *Bush v. Bush*, 824 So. 2d

3

293, 294 (Fla. 4th DCA 2002), to support his argument that "the sanction must be proportional to the dissipation." In *Bush,* we recognized the dissipation of marital assets as a basis for unequal distribution of assets. *Id.* at 294. However, we stated "that evidence that the husband dissipated between $4,500 and $9,000 in marital assets [does not] justif[y] the attribution to him of $43,138 in no-longer-existing assets." *Id.* While we decline to interpret or define what is or would be "proportional to the dissipation," here, the trial court already satisfied the fraud and dissipation by awarding the Former Wife an unequal distribution of marital assets equal to the amount wrongfully taken, as well as the balance of the IRA account, free of any marital interest in favor of the Former Husband. Additionally, the trial court gave the Former Wife possession of the marital home and made the Former Husband responsible for paying the expenses pending sale. Thus, there was nothing further that the trial court needed to counterbalance, once the marital home is sold. Therefore, it was error for the trial court, as punishment for the Former Husband's fraud, to require him to pay the expenses of the marital home without credit for one-half of the expenses from the sale proceeds.

We reverse and remand for proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

WARNER and MAY, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**